UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 23-467(L); 23-469(M) _____ _____ Caption [use short title] _____

Motion for: Emergency Vacatur of Stay Pending Appeal

_____

_____

Set forth below precise, complete statement of relief sought:

Debtor-Appellant requests, on an emergency basis,

that this Court vacate the stay pending appeal

issued by the district court.

_____

In re Voyager Digital Holdings, Inc., et al.

MOVING PARTY: Voyager Digital Holdings, Inc.     OPPOSING PARTY: United States of America, et al.

☐ Plaintiff     ☐ Defendant

☑ Appellant/Petitioner     ☐ Appellee/Respondent

MOVING ATTORNEY: George W. Hicks, Jr., P.C.     OPPOSING ATTORNEY: Benjamin H. Torrance

[name of attorney, with firm, address, phone number and e-mail]

Kirkland & Ellis LLP     United States Attorney's Office, Southern District of New York

1301 Pennsylvania Ave, Washington, D.C. 20004     86 Chambers Street, New York, NY 10007

george.hicks@kirkland.com;  (202) 389-5031     benjamin.torrance@usdoj.gov; (212) 637-2800

Court- Judge/ Agency appealed from: USDC SDNY, Judge Jennifer Rearden

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):

☑ Yes     ☐ No (explain): _____

_____

Opposing counsel's position on motion:

☐ Unopposed ☑ Opposed ☐ Don't Know

Does opposing counsel intend to file a response:

☑ Yes ☐ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☑ No

Has this relief been previously sought in this court? ☐ Yes ☑ No

Requested return date and explanation of emergency: Debtor-Appellant requests

vacatur of the district court's stay pending appeal no later than April 13, 2023. Debtor is counterparty

to a transaction that must close by April 18 or Debtor's estate and over 1 million creditors

(customers) will irreversibly lose $100 million.  The district court's stay prevents

that transaction from closing. The parties require several days before closing to prepare for it.

Is oral argument on motion requested? ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☑ No If yes, enter date: _____

Signature of Moving Attorney:

/s/ George W. Hicks, Jr.     Date: April 3, 2023     Service by: ☑ CM/ECF ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# 23-467(L)
## 23-469(M)

### United States Court of Appeals for the Second Circuit

IN RE VOYAGER DIGITAL HOLDINGS, INC., ET AL.

_____

VOYAGER DIGITAL HOLDINGS, INC.,

*Debtor-Appellant,*

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF VOYAGER DIGITAL HOLDINGS, INC.,

*Intervenor-Appellant*

v.

UNITED STATES OF AMERICA,

*Appellee,*

UNITED STATES TRUSTEE FOR REGION 2

*Appellee*

_____

United States District Court for the Southern District of New York,
No. 23 Civ. 2171 (Hon. Jennifer Rearden)

_____

### DEBTOR-APPELLANT'S EMERGENCY MOTION TO VACATE DISTRICT COURT'S STAY ENJOINING PLAN CONFIRMATION

_____

Christine A. Okike, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, N.Y. 10022
(212) 446-4900
christine.okike@kirkland.com

George W. Hicks, Jr., P.C.
KIRKLAND & ELLIS LLP
1301 Penn. Ave., N.W.,
Washington, D.C. 20004
(202) 389-5000
george.hicks@kirkland.com

April 3, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Debtor-Appellant Voyager Digital Holdings, Inc. states that Debtor Voyager Digital Ltd. holds 100% of its equity interests; Debtor Voyager Digital, LLC states that Debtor-Appellant Voyager Digital Holdings, Inc. holds 100% of its equity interests; and Debtor Voyager Digital Ltd. states that it does not have a parent corporation, nor does any publicly held corporation own 10% or more of its equity interests. Together, these entities are known as "Voyager."

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

STATEMENT ............................................................................................... 3

    A.    Voyager's Chapter 11 Case and Plan ...................................... 3

    B.    The Bankruptcy Court's Stay Denial and the District Court's Stay Order. ................................................................. 8

LEGAL STANDARDS ............................................................................... 12

ARGUMENT ............................................................................................. 13

I.    The Government Has Not Shown A Likelihood Of Success. .......... 13

    A.    Exculpation Provisions Are Well Supported by Law. .......... 13

    B.    The District Court's Analysis Is Erroneous. ......................... 17

II.    The Government Has Not Shown Irreparable Injury. ................... 22

III.    The Balance of Harms Does Not Favor The Government. ............ 25

CONCLUSION ......................................................................................... 28

# Table of Authorities

**Page(s)**

## Cases

*In re 461 7th Avenue Mkt.*,
  2021 WL 5917775 (2d Cir. Dec. 15, 2021) ..................................... 12, 18

*In re Aegean Marine Petroleum Network Inc.*,
  599 B.R. 717 (Bankr. S.D.N.Y. 2019) ................................... 13

*In re Airadigm Commc'ns, Inc.*,
  519 F.3d 640 (7th Cir. 2008) ........................................ 14, 19

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011) ................................. 12

*Blixseth v. Credit Suisse*,
  961 F.3d 1084 (9th Cir. 2020) ............................... 14

*In re Calpine Corp.*,
  2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ........................... 25

*CFTC v. Walsh*,
  618 F.3d 218 (2d Cir. 2010) .................................. 11

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ......................................... 17, 18

*In re Coudert Bros. LLP*,
  673 F.3d 180 (2d Cir. 2012) .................................. 13

*Dist. Att'y of N.Y. County v. Republic of Philippines*,
  681 F.App'x 37 (2d Cir. 2016) ............................... 11

*In re First Central Financial Corp.*,
  377 F.3d 209 (2d. Cir. 2004) ............................... 13

*Jayaraj v. Scappini*,
  66 F.3d 36 (2d Cir. 1995) .................................. 25

*Kentucky v. Biden*,
   23 F.4th 585 (6th Cir. 2022) .............................................................. 22

*In re LATAM Airlines Grp. S.A.*,
   2022 WL 2206829 (Bankr. S.D.N.Y. 2022) ........................................ 14

*In re LATAM Airlines Grp. S.A.*,
   2022 WL 2657345 (Bankr. S.D.N.Y. 2022) ........................................ 26

*Michael v. INS*,
   48 F.3d 657 (2d Cir. 1995) ................................................................. 12

*In re Murray Metallurgical Coal Holdings, LLC*,
   623 B.R. 444 (Bankr. S.D. Ohio 2021) ............................................... 13

*New York v. Trump*,
   490 F.Supp.3d 736 (S.D.N.Y. 2020) .............................................. 22, 25

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................... *passim*

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000) ............................................................... 14

*Sahu v. Union Carbide Corp.*,
   475 F.3d 465 (2d Cir. 2007) ............................................................... 11

*SEC v. Citigroup Global Markets, Inc.*,
   752 F.3d 285 (2d Cir. 2014) ............................................................... 11

*SEC v. Daspin*,
   557 F.App'x 46 (2d Cir. 2014) ........................................................... 23

*State v. Biden*,
   10 F.4th 538 (5th Cir. 2021) .............................................................. 22

*Tough Traveler, Ltd. v. Outbound Products*,
   60 F.3d 964 (2d Cir. 1995) ................................................................. 24

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989) ............................................................... 22

iv

*United States v. All Assets of Statewide Auto Parts, Inc.*,
  971 F.2d 896 (2d Cir. 1992) .................................................................. 11

*In re World Trade Ctr. Disaster Site Litig.*,
  503 F.3d 167 (2d Cir. 2007) ............................................................... 12

*Wyoming v. Dep't of Int.*,
  2018 WL 2727031 (10th Cir. June 4, 2018) ...................................... 11

## Statutes

11 U.S.C. §105(a) ................................................................................. 15

11 U.S.C. §1123(b)(6) .......................................................................... 14

11 U.S.C. §1129(a) ........................................................................ 14, 16

11 U.S.C §1142(a) ................................................................................ 14

28 U.S.C. §1291(a)(1) .......................................................................... 11

28 U.S.C. §1651(a) .............................................................................. 12

## Other Authorities

Complaint, *CFTC v. Zhao, et al.*,
  No. 23-cv-01887 (N.D. Ill. Mar. 27, 2023) ......................................... 16

Complaint, *SEC v. Payward Ventures Inc. (d/b/a Kraken)*,
  No. 23-cv-588 (N.D. Cal. Feb. 9, 2023) ............................................... 16

Complaint, *SEC v. Sun, et al.*,
  No. 23-cr-2433 (S.D.N.Y. Mar. 22, 2023) ........................................... 16

## INTRODUCTION

Nearly a year ago, Voyager, a cryptocurrency trading platform with over 1.1 million customers, sought Chapter 11 relief. After highly complex and challenging proceedings, Voyager proposed, 97% of voting creditors approved, and the bankruptcy court confirmed a Chapter 11 plan that delivers exceptional value to Voyager's customers through a transaction with BAM Trading Services Inc. d/b/a Binance.US ("Binance.US") that must close by April 18, 2023.

Throughout the Chapter 11 proceedings, the federal government *never once* identified any concerns with the Binance.US transaction, the cryptocurrency transactions that must precede that transaction, or any other distributions from Voyager's estate. Nonetheless, shortly before plan confirmation, the government objected to a single plan provision exculpating certain parties for engaging in conduct required by the plan. The bankruptcy court overruled that objection and denied the government's motion to stay the confirmation order after finding that a stay would irreversibly reduce the estate (and customer recoveries) by $100 million, burn an additional $10 million in estate assets every month, and prohibit customers from accessing their savings—while

1

inflicting no specific or imminent harm upon the government, which posited only hypothetical enforcement scenarios and remained free to seek to enjoin any going-forward transactions.

Nevertheless, without disputing (or even substantively addressing) any of these findings, the district court granted a stay pending appeal. The stay order is rife with error, however, and should be vacated. The court did not conclude that the government is likely to succeed on the merits of its appeal—only that it had raised "serious questions," a standard this Court has never endorsed for stays and requires an additional showing that the balance of hardships tips "decidedly" toward the movant, which the district court never addressed or determined. The court also conflated the irreparable-injury requirement with other stay factors, and held that the mere possibility of an injury—specifically, the risk of equitable mootness on appeal—comprised irreparable injury, all contrary to Supreme Court precedent. Finally, the district court's balancing of the hardships disregarded the bankruptcy court's findings and blinks reality: The government's claimed injury absent a stay is hypothetical and inchoate, while the harm to Voyager and its customers from a stay is certain and extraordinary.

The stakes are high, the district court's errors are significant, its decision is unprecedented, and vacatur of the stay is urgently needed. The Binance.US transaction must close by April 18. The parties require several days beforehand to complete transactions necessary for closing. Accordingly, Voyager proposes the following briefing schedule:

| | |
|---|---|
| **Voyager's Motion to Vacate** | Monday, April 3, 2023 |
| **Government's Opposition** | Thursday, April 6, 2023 |
| **Voyager's Reply** | Sunday, April 9, 2023 |
| **Court's Decision** | Thursday, April 13, 2023 |

## STATEMENT

### A.   Voyager's Chapter 11 Case and Plan

**1.**  Voyager operated a platform with over 1.1 million users that allowed customers to buy, sell, and store cryptocurrency. Bk.Dkt.1113.¶9.  Voyager also operated a lending business, and Three Arrows Capital ("3AC") was one of its largest borrowers. Bk.Dkt.1119.¶15.  Following 3AC's collapse, Voyager filed Chapter 11 petitions on July 5, 2022.

Voyager initially pursued a Chapter 11 plan that contemplated a transaction with FTX.  Bk.Dkt.1119.¶14.  But Voyager was a victim of

FTX's fraud, and following FTX's historic collapse in November 2022, Voyager was forced to explore alternatives. Bk.Dkt.1119.¶15.

On December 18, 2022, Voyager Digital, LLC entered into an asset purchase agreement with Binance.US. Bk.Dkt.863.V.B.1. On December 21, Voyager sought permission from the bankruptcy court to enter into the asset purchase agreement, which would be effectuated through a Chapter 11 plan. Bk.Dkt.775.

The Binance.US transaction contemplates pro rata in-kind distributions of cryptocurrency to Voyager's creditors (*i.e.*, customers), such that each will receive the type of cryptocurrency associated with his or her account. App.A-82; Bk.Dkt.1113.¶30. To do so, however, Voyager must "rebalance" its holdings, that is, buy and sell cryptocurrencies to ensure it has enough of each type to distribute. Bk.Dkt.775.¶29. Accordingly, in its December 21 motion, Voyager requested approval to begin the required rebalancing. *Id.* On January 13, 2023, the bankruptcy court authorized entry into the asset purchase agreement and the rebalancing. Bk.Dkt.860. No government entity raised any concern.

**2.** Also on January 13, Voyager filed a proposed Chapter 11 plan centered around the Binance.US transaction. Bk.Dkt.852. The plan also provided Voyager a "toggle" option under which it would make cryptocurrency distributions to creditors itself, though at significantly less value to creditors and still following a rebalancing (which is necessary for any in-kind cryptocurrency distribution). App.A-141; App.A-90.

The proposed plan included a provision exculpating certain parties "from any Cause of Action for any act or omission on or after the Petition Date and prior to the Effective Date based on the Chapter 11 Cases [or] the formulation, preparation, dissemination, negotiation or filing, or consummation of [the plan]" absent "actual fraud, willful misconduct, or gross negligence." Bk.Dkt.852. The exculpated parties included Voyager; certain Voyager employees; the Official Committee of Unsecured Creditors; various professionals retained by Voyager, the Committee, and Binance; and the Plan Administrator. *Id*.

On February 24, 2023, the U.S. Trustee—but no other federal regulator—objected to the scope of the proposed exculpation provision, while not disputing that parties implementing confirmed Chapter 11

plans should not be subject to legal exposure in doing so. Bk.Dkt.1085. On March 2, the bankruptcy court commenced a four-day confirmation hearing. On March 6—after the plan objection deadline—the U.S. Attorney's Office filed a lengthy objection complaining that the plan "contain[s] improperly broad exculpation language that purports to bind the Government from exercising its police and regulatory powers." Bk.Dkt.1144.

**3.** On March 8, 2023, the bankruptcy court confirmed the plan. The court retained the exculpation provision set forth above (including the "actual fraud, willful misconduct, or gross negligence" exception), but modified it to add the following language clarifying that exculpation would be available only with respect to *court-required* conduct:

- "[T]he Plan contemplates certain rebalancing transactions and the completion of distributions of cryptocurrencies to creditors. The Exculpated Parties shall have no liability for, and are exculpated from, any claim for fines, penalties, damages, or other liabilities based on their execution and completion of the rebalancing transactions and the distribution of cryptocurrencies to creditors in the manner provided in the Plan. … [T]his paragraph reflects the fact that Confirmation of the Plan requires the Exculpated Parties to engage in certain rebalancing transactions and distributions of cryptocurrencies and the fact that no regulatory authority has taken the position during the [Confirmation] Hearing that such conduct would violate applicable laws or regulations."

- "Nothing in this provision shall limit in any way the powers of any Governmental Unit to contend that any rebalancing transaction should be stopped or prevented, or that any other action contemplated by the Plan should be enjoined or prevented from proceeding further. Nor does anything in this provision limit the enforcement of any future regulatory or court order that requires that such activities either cease or be modified, or limit the penalties that may be applicable if such a future regulatory or court order is issued and is violated."

App.A-7. The court also stated that, with the exception of conduct required by the plan, "nothing … shall release or restrict any claim by" the government under "any civil or criminal laws," "enjoin" the government from bringing such claims, or "exculpate any … party from any liability to" the government. App.A-45. And even for court-approved transactions, "actual fraud, willful misconduct, or gross negligence" is not exculpated. App.A-8.

The bankruptcy court subsequently entered specific factual findings supporting its confirmation order. Relevant here, it found that for "many months," government entities "had a full and fair opportunity to object if they believe that the rebalancing transactions that [the court] previously approved and that are contemplated by the plan are illegal in any way, or if they believe that the distributions of cryptocurrencies and cash that are contemplated by the plan are violative in any way of any

7

applicable statute, rule or regulation." App.A-142. But no government entity so objected, with the SEC "only vaguely hint[ing] at possible issues that have not even been described in a manner that would permit the Court or the parties to address them." *Id.*

The court also found that the approved exculpation provision was "routine" and that "parties should not be liable for doing things that the Court authorizes them to do and that in many instances a court may direct them to do." App.A-159, A-161. Plan confirmation "will require" persons "to complete the rebalancing transactions" and "make the distributions of cryptocurrencies that the Plan contemplates," and those persons "are entitled to know that they will not incur liability just for doing what [the court] ha[s] approved and required." App.A-153, A-165. The court explained, moreover, that it was not providing exculpation for conduct "not specifically authorize[d]," not barring the government "from trying to stop transactions from occurring," and not "preventing the enforcement of any law or regulation." App.A-167, A-169.

## B. The Bankruptcy Court's Stay Denial and the District Court's Stay Order.

On March 14, the government appealed to the district court and sought a stay pending appeal from the bankruptcy court. The

bankruptcy court denied a stay because the exculpation provision simply ensures that "people who are required to do things pursuant to [the] confirmation order will not be held liable for having done" them, while preserving "the right of the Government to seek to stop the activities at any time." App.A-185. The court also found that the government would suffer no identifiable, much less irreparable, harm: The government's concerns about the risk of equitable mootness were "merely hypothetical," and the government remains "free … to take action to stop the Debtors' cryptocurrency trades and/or cryptocurrency distributions." App.A-195.

The court further found the balance of harms favored Voyager: a stay would prevent the Binance.US transaction from closing despite "uncontroverted evidence" that losing that transaction "would lead to a reduction of approximately $100 million in the assets available for distribution to creditors," and indefinitely prevent Voyager customers from accessing "significant portions of the[ir] life savings or retirement savings." App.A-196. By contrast, the government failed to identify any real-world harms a stay would prevent. App.A-197.

On March 17, the government asked the district court for a stay pending appeal. Dct.Dkt.3. To allow the court to decide the motion, Voyager agreed to a short-term stay until March 24, which the district court extended to March 28. App.A-196; Dct.Dkt.28; Dct.Dkt.41.

On March 27, the court granted the government's motion in a one-page order, stating that an opinion with reasons would issue "shortly." App.A-198. That opinion, however, did not issue until five days later, on April 1. App.A-199.

The district court did not conclude the government was likely to succeed on the merits of its appeal. Instead, the court held that it is sufficient that the government raised "serious questions." App.A-211–A-216. Nor did the court identify any irreparable harm to the government, merely observing that a stay denial could "moot the appeal." App.A-217.

The court did not dispute that a stay would reduce the assets available for distribution to creditors by at least $100 million, delay distributions, and potentially prevent any cryptocurrency distributions. The court nevertheless concluded that "the balance of hardships lies with the Government" because of the "fundamentally strong public interest in"

10

law enforcement.  App.A-216–A-218.  The court did not address whether the balance of hardships was "decidedly" in the government's favor.

The court set an expedited merits briefing schedule concluding with the government's reply brief due April 18.  App.A-218.  That schedule, however, appears premised on the court's belief that the Binance.US transaction has "an outside effective date of May 8, 2023 … with a possible thirty-day extension."  App.A-201.  But as Voyager stated during the stay hearing, the transaction's drop-dead date is April 18, and only Binance.US (not Voyager) can extend that deadline.  Dct.Dkt.57, at 51; Bk.Dkt.835.8.1(c).

On April 1, Voyager appealed the district court's stay.[1]

---

[1] This Court has jurisdiction under 28 U.S.C. §1291(a)(1).  An order is immediately appealable under §1291(a)(1) when it has the "practical effect" of an injunction, *CFTC v. Walsh*, 618 F.3d 218, 224 (2d Cir. 2010), meaning it "might have a serious, perhaps irreparable consequence" and "can be effectually challenged only by immediate appeal," *Sahu v. Union Carbide Corp.*, 475 F.3d 465, 467 (2d Cir. 2007); *see SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014).  The stay order easily satisfies this standard.  It enjoins Voyager from consummating the plan; irreversibly reduces estate assets by $100 million; and cannot be effectively reviewed after final judgment, because the irreparable injury will have occurred.  *See Dist. Att'y of N.Y. County v. Republic of Philippines*, 681 F.App'x 37, 39 (2d Cir. 2016) (reviewing stay order under §1292(a)(1)); *Wyoming v. Dep't of Int.*, 2018 WL 2727031, at *1 (10th Cir. June 4, 2018) (same); *see also United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 900-01 (2d Cir. 1992).  The Court also has

## LEGAL STANDARDS

"A stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Courts consider four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434; *see In re 461 7th Avenue Mkt.*, 2021 WL 5917775, at *1 (2d Cir. Dec. 15, 2021) (describing these factors as "well-established"). The movant bears the burden of proof. *Nken*, 556 U.S. at 433-34. The "first two factors" are "the most critical," and when the government is a party, the third and fourth factors "merge." *Id.* at 434-35. The same principles govern whether to vacate a stay. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

---

jurisdiction under 28 U.S.C. §1651(a), which allows a court to "safeguard … potential future proceedings," *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 n.20 (2d Cir. 2011), or "preserve its potential jurisdiction," *Michael v. INS*, 48 F.3d 657, 663 (2d Cir. 1995).

This Court reviews a bankruptcy court's decision "independent of the district court's review." *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012). The Court reviews the bankruptcy court's "conclusions of law de novo" and its "findings of fact under a clearly erroneous standard." *In re First Central Financial Corp.*, 377 F.3d 209, 212 (2d. Cir. 2004).

## ARGUMENT

## I. The Government Has Not Shown A Likelihood Of Success.

### A. Exculpation Provisions Are Well Supported by Law.

**1.** The government only challenges the plan's exculpation provision. As the bankruptcy court explained, however, such provisions are supported by "a long line of authority" that "parties should not be liable for things that [a bankruptcy] order will require them to do." App.A-182.

Exculpation provisions "ensure that capable, skilled individuals are willing to assist … in Chapter 11 cases" by providing assurances that they "will not be second-guessed and hounded" after the fact. *In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 501 (Bankr. S.D. Ohio 2021). They also guard against efforts "to undermine or second-guess" the court's determinations after a bankruptcy court "has authorized [a] transaction." *In re Aegean Marine Petroleum Network Inc.*,

13

599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019). Courts across the country thus routinely approve exculpation provisions. *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000); *Blixseth v. Credit Suisse*, 961 F.3d 1084, 1084-85 (9th Cir. 2020); *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 657-58 (7th Cir. 2008); *In re LATAM Airlines Grp. S.A.*, 2022 WL 2206829, at *49-50 (Bankr. S.D.N.Y. 2022) (finding exculpation clauses "well settled").

A bankruptcy court's authority to approve exculpatory provisions is firmly rooted in the Bankruptcy Code. To confirm a plan, a bankruptcy court must find that it is "not by any means forbidden by law." 11 U.S.C. §1129(a). Once the court does so, "the debtor and any entity organized … for the purpose of carrying out the plan *shall carry out the plan* and s*hall comply with any orders of the court*." *Id.* §1142(a) (emphases added). Exculpatory provisions thus assure parties "carry[ing] out the plan" that obeying court orders will not subject them to liability. Furthermore, the Code provides that plans "may" contain "any other appropriate provision not inconsistent with the applicable provisions of [the Code]," which readily encompasses exculpatory provisions. 11 U.S.C. §1123(b)(6). And §105(a) empowers bankruptcy courts to "issue

any order … that is necessary or appropriate to carry out the provisions of this title," or "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders."  11 U.S.C. §105(a).

**2.**  As the bankruptcy court found, the exculpation clause here fits comfortably within well-established caselaw.  It covers only "transactions or actions approved by the Bankruptcy Court," while carving out fraud, willful misconduct, or gross negligence.  App.A-8.  Furthermore, it does not bar the government from "preventing the enforcement of any law," "stop[ping] transactions from occurring," or limiting liability for violation of regulatory or court orders.  App.A-167, A-169.  The provision is thus *narrower* than many exculpation provisions upheld by courts.  App.A-189.

This case, moreover, is a prime example of why exculpation provisions are critical.  It is undisputed that, to maximize distributions and return value to creditors, Voyager must "rebalance" its portfolio and then facilitate in-kind transfers of cryptocurrency to customers.  Yet the government—despite never having identified any specific concerns for months during Voyager's Chapter 11 proceedings—has recently launched a blitzkrieg against the cryptocurrency industry, including

Binance.com.[2]  Under these circumstances, no rational party connected to the Voyager Chapter 11 proceedings would engage in rebalancing or distribution of cryptocurrencies absent explicit assurances that it will not face liability for that conduct.

The bankruptcy court took care to ensure the plan was "not by any means forbidden by law."  11 U.S.C. §1129(a)(3).  It gave the government *numerous* opportunities to explain why the contemplated transactions were unlawful, yet the government failed to do so.  App.A-163.  The court thus approved a narrow exculpation provision—narrower than Voyager's proposal—for carrying out court-approved and court-required transactions, while (1) carving out fraud, willful misconduct, and gross negligence; (2) allowing the government to seek to enjoin transactions and obtain penalties for violating such orders; and (3) recognizing the government's power to bring actions under "any civil or criminal laws" for non-court-authorized conduct.  *See* App.A-7-A-8, A-45-A-46; pp.5-8,

---

[2] *See, e.g.,* Complaint, *CFTC v. Zhao, et al.*, No. 23-cv-01887 (N.D. Ill. Mar. 27, 2023); Complaint, *SEC v. Sun, et al.*, No. 23-cr-2433 (S.D.N.Y. Mar. 22, 2023); Complaint, *SEC v. Payward Ventures Inc. (d/b/a Kraken),* No. 23-cv-588 (N.D. Cal. Feb. 9, 2023).

16

*supra*. That carefully calibrated exculpation provision does not violate the law.

## B. The District Court's Analysis Is Erroneous.

The district court nonetheless concluded that the government had satisfied its burden on the first factor of the stay test. That determination was rife with error.

**1.** The district court's flaws begin from the outset, when it watered down the government's burden. Instead of requiring a "strong showing" that the government "is likely to succeed on the merits," *Nken*, 556 U.S. at 434, the court held it need only identify "'serious questions' going to the merits of the dispute and [that] the applicant is able to establish that the balance of hardships tips decidedly in its favor," App.A-211.

This Court has never held that the "serious questions" standard applies to requests for a stay. *Cf. Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (recognizing "serious questions" standard in preliminary-injunction context). Nor could it, given that the Supreme Court held in *Nken* that "the 'traditional' standard *for a stay*" requires evaluating "whether the stay applicant has made a strong showing that he is likely to succeed on

17

the merits." 556 U.S. at 425-26 (emphasis added).  Indeed, since *Nken*, this Court has never suggested that the "serious questions" standard applies when seeking a stay.  *E.g.*, *461*, 2021 WL 5917775, at *1-2 (affirming denial of stay where movant did "not ma[k]e a 'strong showing' that it is likely to succeed on the merits of its appeal").  The district court's failure to apply the proper standard alone requires vacatur.[3]

Even if the "serious questions" standard were viable, the district court still erred.  That standard requires "establish[ing] that the balance of hardships tips *decidedly* in [the movant's] favor."  App.A-211 (emphasis added).  This additional obligation is critical to ensuring that a movant's "overall burden is no lighter than the one it bears under the 'likelihood of success' standard."  *Citigroup*, 598 F.3d at 35.  Yet despite citing the "decidedly" language earlier in its opinion, the court did not actually apply that requirement when analyzing the balance of hardships, much less conclude that the government "establish[ed]" it.  Indeed, in the court's view, "*each side* is threatened with unquantifiable

---

[3] The district court stated that "no party has questioned" the "serious questions" standard.  App.A-211.  Not so.  Voyager cited *Nken* and *461* for the correct "strong showing" standard and never suggested that a different standard applies.

and irreparable injury," App.A-218 (emphasis added). That reasoning is flawed, *see* pp.22-27, *infra*, but even taken at face value, it is a tacit acknowledgment that the balance cannot "decidedly" favor the government. Because the district court impermissibly diluted the government's burden, the stay was improper.

**2.** The district court's merits analysis was likewise severely flawed. The court accepted that exculpation provisions are generally appropriate, but not when hypothetical government enforcement actions are in play. As the court conceded, however, the only appellate court to address this issue, the Seventh Circuit, *upheld* such a provision over the government's objection. *See Airadigm*, 519 F.3d at 657. The district court distinguished *Airadigm* by noting the exculpation provision there "preserve[d] the FCC's regulatory powers." App.A-212. But the exculpation provision here likewise preserves regulatory powers; under it, "the Government is free at any time to take action to stop the Debtors' cryptocurrency trades and/or cryptocurrency distributions if the Government decides that those activities should be stopped." App.A-195.

The district court faulted Voyager for failing to "provide[] any authority for the proposition that a bankruptcy court can release criminal

liability." App.A-212–A-213. Yet Voyager cited literally dozens of cases where courts confirmed plans with exculpation provisions lacking a government carveout. *See* Dct.Dkt.19 at 18-23. Those provisions, like the provision here, excluded from exculpation "actual fraud, willful misconduct, or gross negligence." The district court identify no differences between those provisions and this provision; instead, it stated that this wall of precedent "fails to show that *this* Exculpation Provision is permissible" because the government's arguments had "not been considered" in those cases. App.A-213. But the notion that the government, through the U.S. Trustee, sat idly by in numerous cases while its enforcement authority was restricted is utterly fanciful. The more obvious explanation is that none of those plans, nor the plan here, actually restricts the government's enforcement authority.

The district court also had no answer for the bankruptcy court's sensible reasoning that "actions that are specifically approved by a court and/or that have been explicitly required to be taken by court order" warrant exculpation. *Id*. The court only mustered that "[i]t is not clear … that this precept applies against Government enforcement," and "additional briefing" was warranted. *Id*. That rationale is the antithesis

20

of the required likelihood-of-success finding for a stay—and, if the "serious questions" alternative is viable, only reinforces the need for the government to establish that the balance of hardships tips "decidedly" in its favor, which the government never attempted and the district court never found.

The district court conceded that it is "likely that some species of quasi-judicial immunity applies," and that the Eighth Circuit has held that it applies to criminal liability. App.A-215–A-216. Downplaying that fact, the court observed that immunity would not apply to "a criminal act that was not done in good faith," *id.* at App.A-216, but it did not explain how a criminal act taken in bad faith could be anything but "willful misconduct" or "gross negligence" excluded from exculpation here. The court also observed that immunity is ordinarily an affirmative defense, *id.*, but that objection would apply to *any* exculpation provision—whether involving the government or not—and yet as even the court conceded, exculpation provisions are routinely upheld.

The district court also relied on separation-of-powers concerns. App.A-215–A-216. But the court got those concerns backwards. The exculpation provision here does not prevent the government from

21

enforcing any law or preventing any unlawful act *ex ante*. As the bankruptcy court found (repeatedly), all the exculpation provision does is allow individuals to comply with a court order without fear of *ex post* liability. Permitting the government to prosecute someone for obeying a court order that requires them to take certain actions—especially where, as here, the court specifically concluded that the conduct at issue is lawful, and the government never previously identified that conduct as problematic—is a direct threat to due process and the integrity of judicial decisionmaking.

## II.    The Government Has Not Shown Irreparable Injury.

The irreparable-injury requirement applies to the government. *See, e.g.*, *Kentucky v. Biden*, 23 F.4th 585, 610 (6th Cir. 2022); *State v. Biden*, 10 F.4th 538, 545, 557 (5th Cir. 2021); *New York v. Trump*, 490 F.Supp.3d 736, 741 (S.D.N.Y. 2020) (three-judge panel). The government thus must do more than "simply show[] some possibility of irreparable injury," *Nken*, 556 U.S. at 434-35; it is insufficient that it "*may* suffer irreparable injury without a stay." *Trump*, 490 F.Supp.3d at 741. Furthermore, an alleged injury must be "neither remote nor speculative, but actual and imminent," *Tucker Anthony Realty Corp. v. Schlesinger*,

888 F.2d 969, 975 (2d Cir. 1989); *SEC v. Daspin*, 557 F.App'x 46, 48 (2d Cir. 2014).

The government did not remotely satisfy its burden. As the bankruptcy court found, the government's asserted injury is "merely hypothetical, because the Government cannot identify anything that it actually would want to do" that the provision prevents. App.A-195. The court also stressed that the government "is free at any time to take action to stop the Debtors' cryptocurrency trades and/or cryptocurrency distributions if the Government decides that those activities should be stopped." *Id.* Indeed, because the exculpation provision simply says that "people and entities who do what [the court's] order requires will not themselves be liable for having done what [is] required," that provision cannot "possibly threaten[] the public health, safety or welfare." *Id.*

The district court did not disagree with (or even address) any of the bankruptcy court's factual findings, yet it nevertheless issued a stay. But the district court's cursory irreparable-injury analysis—such as it is—is deeply flawed in multiple respects.

As an initial matter, the district court determined that the final three stay factors all "'merge' where the Government is a party." App.A-

216. That was legal error. In *Nken*, the Supreme Court held that only the third and fourth factors merge—*not* the irreparable injury factor. *See* 556 U.S. at 434. To the contrary, *Nken* stresses that the first two factors are "the most critical," and the other factors are relevant only if the movant has already satisfied the first two. *Id.*

Here, rather than addressing irreparable harm as an independent and "critical" threshold factor, the district court conflated the second, third, and fourth factors. This error alone requires vacatur of the stay. *See, e.g.*, *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 965 (2d Cir. 1995) (vacating where court "did not apply the correct legal standard with respect to … irreparable injury").

Indeed, reflecting that initial error, the district court never squarely addressed irreparable injury at all. At most, the court devoted a single paragraph to concluding that a stay "would preserve the Government's—and the public's—right to meaningful appellate review of the Exculpation Provision." App.A-217. But that statement sounds in the public-interest factor, not the irreparable-injury factor.

The court did briefly address the government's argument that, absent a stay, its appeal could become equitably moot—the assertion the

24

government advanced below in claiming irreparable injury. App.A-217; App.A-194–A-195. But the possibility that an appeal *might* become equitably moot—which would require holdings to that effect by both the district court and this Court, over the government's opposition—is the very definition of a "speculative" injury that the government "*may* suffer," which does not demonstrate irreparable harm. *Trump*, 490 F.Supp.3d at 741; *see also, e.g.*, *In re Calpine Corp.*, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008) ("Merely invoking equitable mootness—a risk that is present in any post-confirmation appeal of a Chapter 11 plan—is not sufficient to demonstrate irreparable harm."). This separate legal error further requires vacatur of the stay. *See, e.g., Jayaraj v. Scappini*, 66 F.3d 36, 40 (2d Cir. 1995) (reversing finding of irreparable injury because court "accept[ed] speculative and attenuated injuries" despite rule that irreparable harm must be "imminent").

## III. The Balance of Harms Does Not Favor The Government.

Finally, while the government's injury is hypothetical and inchoate, the harm to Voyager and its creditors from a stay is certain and extraordinary. The bankruptcy court found that a stay will cost creditors "approximately $100 million" by preventing the deal with Binance.US.

App.A-196.  The bankruptcy court also found that a stay will continue to prevent Voyager's creditors—many of whom have material savings frozen—from accessing their accounts, while burning more than $10 million monthly in administrative expenses.  *Id.*  Given these facts— which are *undisputed*—the bankruptcy court found that "[t]he harm that a stay would pose to the Debtors, and their constituents, is therefore quite significant and immediate." *Id.*

The bankruptcy court also found that the public interest does not support a stay, especially given that its orders "do not prohibit any regulatory action." *Id.* at 18.  Further, "the public interest favors the expedient administration of … bankruptcy proceedings." *In re LATAM Airlines Grp. S.A.*, *LATAM*, 2022 WL 2657345 at *11 (Bankr. S.D.N.Y. 2022).  A stay directly thwarts that goal.

The district court said essentially nothing in response, except to ignore the bankruptcy court's finding that a stay would irreversibly cost creditors $100 million by preventing the Binance.US transaction.[4]

---

[4] As noted, the district court believed the Binance.US transaction could close by May 8, if not later, when in fact Binance.US has the absolute right to walk away on April 19.  *See* p.11, *supra*.

Instead, the court concluded that the government's hypothetical interest in maybe one day bringing an unidentified enforcement action targeting as-yet-unspecified conduct outweighs the "significant and immediate" harm to over one million people. App.A-196; App.A-216-A-217. That determination blinks reality. And it is unsupported by the court's invocation of *Nken*, App.A-217-A-218, which merely noted a public interest in the "prompt execution of removal orders" in the course of rejecting the argument that there is *no* effect on the public interest of a stay of removal orders. 556 U.S. at 436. *Nken* only underscores that careful articulation and application of the stay factors matters—just as it matters here to over one million creditors directly affected by the stay but ignored in the district court's deeply flawed analysis.

## CONCLUSION

The Court should vacate the stay.

April 3, 2023                              Respectfully submitted,

                                          */s/ George W. Hicks, Jr.*
Christine A. Okike, P.C.                  George W. Hicks, Jr., P.C.
KIRKLAND & ELLIS LLP                      KIRKLAND & ELLIS LLP
601 Lexington Avenue                      1301 Penn. Ave., N.W.,
New York, N.Y. 10022                      Washington, D.C. 20004
(212) 446-4900                            (202) 389-5000


*Counsel for Debtor-Appellant*

## CERTIFICATE OF SERVICE

On April 3, 2023, the foregoing opposition was submitted to the Court by CM/ECF and thereby served on all parties.

/s/ *George W. Hicks, Jr.*
George W. Hicks, Jr.

## CERTIFICATE OF COMPLIANCE

This opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). According to the word processing system used to prepare this document, the opposition contains 5,200 words.

/s/ *George W. Hicks, Jr.*
George W. Hicks, Jr.