# 23-467(L)
## 23-469(M)

### United States Court of Appeals for the Second Circuit

IN RE VOYAGER DIGITAL HOLDINGS, INC., ET AL.

———————

VOYAGER DIGITAL HOLDINGS, INC.,

*Debtor-Appellant,*

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
VOYAGER DIGITAL HOLDINGS, INC.,

*Intervenor-Appellant*

v.

UNITED STATES OF AMERICA,

*Appellee,*

UNITED STATES TRUSTEE FOR REGION 2

*Appellee*

———————

United States District Court for the Southern District of New York,
No. 23 Civ. 2171 (Hon. Jennifer Rearden)

———————

**DEBTOR-APPELLANT'S REPLY IN SUPPORT OF
EMERGENCY MOTION TO VACATE DISTRICT COURT'S
STAY ENJOINING PLAN CONFIRMATION**

———————

Christine A. Okike, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, N.Y. 10022
(212) 446-4900
christine.okike@kirkland.com

George W. Hicks, Jr., P.C.
KIRKLAND & ELLIS LLP
1301 Penn. Ave., N.W.,
Washington, D.C. 20004
(202) 389-5000
george.hicks@kirkland.com

April 7, 2023

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 2

I.  This Court Has Jurisdiction Because The Stay Has The "Practical Effect" Of An Injunction. .................................................. 2

II.  The Government Has Not Shown A Likelihood Of Success. ............ 4

III.  The Government Has Not Established Irreparable Injury. ............. 9

IV.  The Balance of Harms Does Not Favor The Government. ............ 11

CONCLUSION ........................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Communications Corp.*,
361 B.R. 337 (S.D.N.Y. 2007) ............................................................. 11

*In re Airadigm Commc'ns, Inc.*,
519 F.3d 640 (7th Cir. 2008) ................................................................ 4

*CFTC v. Walsh*,
618 F.3d 218 (2d Cir. 2010) .................................................................. 2

*Cuomo v. U.S. Nuclear Reg. Commn.*,
772 F.2d 972 (D.C. Cir. 1985) ............................................................ 10

*Helix Energy Sols. Group, Inc. v. Hewitt*,
143 S. Ct. 677 (2023) .......................................................................... 14

*In re LATAM Airlines Grp. S.A.*,
2022 WL 2206829 (Bankr. S.D.N.Y. 2022) .......................................... 4

*Maryland v. King*,
567 U.S. 1301 (2012) (Roberts, C.J., in chambers) .............................. 9

*New York v. Trump*,
490 F.Supp.3d 736 (S.D.N.Y. 2020) .................................................... 10

*Nken v. Holder*,
556 U.S. 418 (2009) ................................................................. 3, 4, 9, 10

*Providence Journal Co. v. FBI*,
595 F.2d 889 (1st Cir. 1979) ............................................................... 11

*In re Remington Rand Corp.*,
836 F.2d 825 (3d Cir. 1988) .................................................................. 7

*Suffolk Parents of Handicapped Adults v. Wingate*,
101 F.3d 818 (2d Cir. 1996) .................................................................. 4

*In re The City of New York*,
607 F.3d 923 (2d Cir. 2010) .................................................................. 3

*Tough Traveler, Ltd. v. Outbound Products*,
60 F.3d 964 (2d Cir. 1995) .................................................................... 9

*In re Trans World Airlines, Inc.*,
18 F.3d 208 (3d Cir. 1994) .................................................................... 3

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989) ................................................................ 10

*United States v. Santtini*,
963 F.2d 585 (3d Cir. 1992) .................................................................. 3

## Statutes

11 U.S.C. §105(a) ...................................................................................... 6

11 U.S.C. §1125(e) ................................................................................. 5, 6

11 U.S.C. §1129(a) .................................................................................... 6

28 U.S.C. §1291(a)(1)............................................................................. 2, 3

28 U.S.C. §1651(a) .................................................................................... 3

## INTRODUCTION

Having persuaded the district court to stay confirmation of Voyager's plan, the government now runs away from the court's decision at every turn. The government does not defend the court's "serious questions" standard, its conflation of the irreparable-injury requirement with other stay factors, or its incorrect assertion that the Binance.US closing date is May 8 rather than April 18. Nor does the government confront the district court's disregard of key bankruptcy court findings, including that (1) the government never identified any wrongdoing regarding the transactions that the plan requires (yet continues to threaten *ex post* liability for individuals implementing the plan); (2) the government remains free to seek to enjoin any transaction; and (3) if the Binance.US deal does not close, Voyager's estate will irreversibly lose $100 million.

Instead, the government advances contentions contrary to the record, caselaw, and common sense. On the merits, it largely ignores Voyager's arguments, instead proffering theories that even the district court did not accept. On irreparable injury, it cites cases where specific statutes were enjoined while never identifying any statute enjoined here,

1

and it wrongly invokes the mere possibility of equitable mootness. And on the balance of harms, it claims speculative burdens while disregarding certain, significant injury to Voyager and its 1.1 million customers. The government's arguments and failure meaningfully to defend the district court's decision confirm that the stay is erroneous and should be vacated.

## ARGUMENT

## I. This Court Has Jurisdiction Because The Stay Has The "Practical Effect" Of An Injunction.

The government begins with a misguided assertion that this Court lacks jurisdiction. But as the government eventually admits, Opp.20, this Court has 28 U.S.C. §1291(a)(1) jurisdiction over an order with the "practical effect" of an injunction, *CFTC v. Walsh*, 618 F.3d 218, 224 (2d Cir. 2010). The government merely claims that Voyager "cannot make that showing," Opp.20, but does not deny that the stay enjoins Voyager from consummating the plan and will irreversibly reduce estate assets by $100 million—which cannot be reviewed after final judgment. The order thus "might" (indeed, does) "have a serious, perhaps irreparable consequence" and "can be effectually challenged only by immediate appeal." Mot.11 n.1.

2

The government cites *Nken v. Holder*, 556 U.S. 418 (2009), in arguing that "a stay pending appeal is not an injunction." Opp.20-21. But a stay is appealable where it has the "practical effect" of an injunction, as post-*Nken* decisions recognize. Mot.11 n.1. The government has no answer. Instead, it relies largely on *In re Trans World Airlines, Inc.*, 18 F.3d 208 (3d Cir. 1994). *TWA* did not apply this Court's "practical effect" standard. Regardless, *TWA* holds that §1291(a)(1) jurisdiction exists where an order "grant[s] … the ultimate relief sought by the claimant." *Id.* at 215. That is what occurred here: the government filed an objection specifically to enjoin plan consummation, and it obtained precisely that relief from the district court's stay. This is not a situation where the "relief ordered by the district court was completely unrelated to the 'relief' sought in the underlying action." *United States v. Santtini*, 963 F.2d 585, 591 (3d Cir. 1992). They are one and the same.[1]

---

[1] The Court also has 28 U.S.C. §1651(a) jurisdiction, which extends beyond mandamus jurisdiction. *See In re The City of New York*, 607 F.3d 923, 933 (2d Cir. 2010); *contra* Opp.23 n.7. The government does not dispute the holdings of Voyager's cases: that a court can preserve "potential" jurisdiction.

## II.   The Government Has Not Shown A Likelihood Of Success.

The government's sprawling merits discussion is unavailing.  The government barely mentions the district court's analysis and instead advances arguments the district court did not address, let alone rely on.

As a threshold matter, the government does not defend the district court's watering down of its burden.   Rather than requiring the government to make "a strong showing that [it] is likely to succeed on the merits," *Nken*, 556 U.S. at 434, the court instead used a "serious questions" standard, App.A-211, which the government relegates to a footnote, Opp.26-27 n.8.  Furthermore, despite employing that standard, the district court did not evaluate whether the government established that the balance of hardships "tips decidedly" in its favor.  App.A-218-A-220; *contra* Opp.14.   These legal errors require vacatur.   *See Suffolk Parents of Handicapped Adults v. Wingate*, 101 F.3d 818, 823 (2d Cir. 1996).

The lawfulness of exculpation provisions is "well settled," *In re LATAM Airlines Grp. S.A.*, 2022 WL 2206829, at *49-50 (Bankr. S.D.N.Y. 2022), including against the government, *see In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 657-58 (7th Cir. 2008).  The government argues that

4

the exculpation provision in *Airadigm* did not bar enforcement of regulations. Opp.42. Yet as Voyager has explained—and the government does not rebut—that is also true here. Mot.19.

The government contends that nothing "authorizes bankruptcy courts to grant absolute immunity from criminal or civil liability." Opp.29. The bankruptcy court already rejected such "hyperbole." App.A-192. Putting aside that the exculpation provision only applies to court-approved transactions—and even then does not cover fraud, willful misconduct, or gross negligence—the government "can step in at any time" to prevent illegality. *Id.* By no means is this "absolute immunity."[2]

The government claims that the only statute that could authorize exculpation is 11 U.S.C. §1125(e). Opp.30. Accepting that argument, however, would be revolutionary. Nothing about it is limited to government-initiated litigation; it would apply to essentially all exculpation provisions, even though courts *routinely* authorize exculpation outside of §1125(e). Indeed, apparently recognizing how far-

---

[2] The government persists in claiming that the exculpation provision is ambiguous. Opp.46-49. For the reasons given by bankruptcy court—which the government ignores—this argument is a "red herring." App.A-189.

reaching its position is, the government concedes that §1129(a) also authorizes exculpation provisions—just not provisions of this purported "breadth." Opp.40. Yet that concession defeats its §1125(e) argument.

Regardless, Congress's enactment of a mandatory exculpation provision for certain conduct does not foreclose Congress from authorizing discretionary exculpation for different conduct. As Voyager explained, Congress authorized bankruptcy courts to assess whether proposed plans are lawful and then to issue orders implementing those plans. Mot.14-15. Accordingly, the exculpation provision here, like many others, is supported by the Code, not "silence." Opp.31. The government again says almost nothing in response. It contends that Voyager's argument would give bankruptcy courts a "freestanding source of authority" and turn them into "roving commission[s] to do equity." Opp.38-39. But §105(a) authorizes bankruptcy courts to "tak[e] any action" that they determine is "appropriate to enforce or implement," *inter alia*, §1129(a)—which, as courts nationwide recognize, is all exculpation provisions do.

Nor is any other portion in the government's tour of Chapter 11 relevant. No one disputes that debtors "must comply with the law like

everyone else," the automatic stay does not bar criminal prosecution, or "'[h]aving been a debtor in bankruptcy' does not 'authorize a firm to operate a nuisance … or otherwise excuse it from complying with laws of general application.'" Opp.31 (citations omitted). The only relevant question is whether, after finding a plan to be lawful, a bankruptcy court can provide limited protection (exempting fraud, willful misconduct, or gross negligence) to those who obey its orders. The answer is plainly yes. *See, e.g.*, App.A-187-A-194.[3]

The government responds that reading the Code to mean what it says could shorten statutes of limitations. Opp.32-33. Yet Congress regularly does so, including against the government. *See, e.g.*, *In re Remington Rand Corp.*, 836 F.2d 825, 827-28 (3d Cir. 1988). Regardless, the idea that the government cannot "pursue wrongdoing," Opp.33, ignores that "the Government is free at any time to take action to stop the Debtors' cryptocurrency trades," App.A-195.

---

[3] The government argues that exculpation provisions conflict with justiciability doctrines, Opp.33-34—another argument that would bar *all* exculpation provisions. Regardless, the government would be the plaintiff in any hypothetical proceedings concerning the transactions here.

The government turns the Constitution on its head by invoking due process, Opp.35-36—a protection *against* the government. What jeopardizes due process is the government's willingness to use the threat of prosecution for supposed crimes it refuses to identify. And because no one intends to sue the government, its invocation of "sovereign immunity" is mystifying. Opp.36-37.

Finally, the government downplays the district court's view that "some species of quasi-judicial immunity" likely "applies to at least some parties executing the rebalancing transaction." App.A-215; *contra* Opp.40. To be sure, the district court did not find this point dispositive because it erroneously believed this exculpation provision "bar[s] injunctive relief." App.A-215; *compare* App.A-195. Yet such immunity provides additional support for the exculpation provision. The government again gets things backwards when it faults Voyager for not identifying even more authority supporting the bankruptcy court. Opp.44. The burden to establish a stay rests on the *government*, which cites no case holding that it can prosecute someone for conduct undertaken pursuant to court order.

8

## III. The Government Has Not Established Irreparable Injury.

The government does not address, much less defend, the district court's conflation of the "critical" irreparable-injury requirement with the remaining two factors. *Nken*, 556 U.S. at 434. This failure to "apply the correct legal standard with respect to … irreparable injury" requires vacatur. *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 965 (2d Cir. 1995).

Regardless, the government has not established irreparable injury. The government first argues that "any time [it] is enjoined by a court from effectuating statutes," it "suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); Opp.49-50. But *King* and the government's other cases— none of which the district court cited—each involved an injunction enjoining a specific law. Here, no law has been enjoined. Indeed, in its 55-page brief, the government does not cite a *single* law that it is barred from enforcing (much less intends to enforce). As the bankrupt court repeatedly explained, the government remains free to enforce any law *ex ante*. The government simply may not punish obedience to the bankruptcy court's order (which the government does not otherwise

9

challenge) absent a showing of fraud, willful misconduct, or gross negligence. The government cites no case suggesting this constitutes irreparable injury.[4]

Nor does the risk of equitable mootness comprise irreparable injury. That two different courts *might* conclude that the government's appeal is equitably moot, such that merits arguments "*could* be lost," Opp.15-16 (emphasis added), is exactly the sort of "possibility of irreparable injury" that is insufficient, *Nken*, 556 U.S. at 434-35; *Trump*, 490 F.Supp.3d at 741 (insufficient that movant "*may* suffer irreparable injury"); *see also Cuomo v. U.S. Nuclear Reg. Commn.*, 772 F.2d 972, 976 (D.C. Cir. 1985) (rejecting that risk of mootness on appeal is irreparable injury).

The government has no response to this caselaw, nor to decisions establishing that the alleged irreparable injury must be "actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Instead, it cites *Providence Journal Co. v. FBI*, 595 F.2d 889 (1st Cir. 1979). There, however, the court concluded that

---

[4] The government's argument also proves too much. Even when federal law has been enjoined, courts routinely deny government requests for stays given no irreparable injury. *See, e.g.*, *New York v. Trump*, 490 F.Supp.3d 736, 741 (S.D.N.Y. 2020) (three-judge panel).

appellants' "right of appeal *will* become moot" absent a stay because certain documents' confidentiality "*will* be lost"; thus, "[f]ailure to grant a stay *will* entirely destroy appellants' rights to secure meaningful review." *Id.* at 890 (emphases added). That *certainty* constituted actual, imminent, and irreparable injury. Here, by contrast, the government can only point to the *possibility* of equitable mootness, which is inadequate.

The government's other case, *In re Adelphia Communications Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007), concedes that a "majority" of courts (correctly) hold that the risk of equitable mootness is not irreparable harm. *Adelphia* is inapposite regardless because the court *engaged in an equitable-mootness analysis*, concluding it was "overwhelmingly likely" an appeal would be dismissed. *Id.* at 352. Here, the government has not attempted to show, and no court has determined, that any appeal would be equitably moot, or even "overwhelmingly likely" to be so.

## IV.   The Balance of Harms Does Not Favor The Government.

Finally, the balance of harms is not a close call. On the one hand, if the plan's confirmation is not stayed, the government retains authority to enforce *any* law and enjoin *any* transaction going forward; it only

11

cannot seek *ex post* liability against a handful of parties engaging in conduct the bankruptcy court reviewed and authorized and the government never challenged—and even then, it can do so if the parties' conduct comprises "actual fraud, willful misconduct, or gross negligence." On the other hand, staying plan confirmation *will* result in the irreversible loss of more than *$100 million* in estate assets and customer recoveries, further monthly reductions of $10 million, and continued inaccessibility of the savings of over 1 million individuals.

The government does not mention, much less dispute, these factual findings by the bankruptcy court. Instead, the government offers marginal arguments contrary to the record and common sense.

The government contends that Voyager and its customers "will suffer no legally cognizable injury" without the exculpation provision because they will be "in the same position as everyone else in the commercial world … free to conduct their transactions, but with no preexisting immunity from law enforcement." Opp.52. But the exculpated parties are not "in the same position as everyone else." They are now *required* to engage in certain conduct pursuant to court order— following that court's undisputed finding that the transactions do not

violate any law—yet face an ongoing government onslaught against the cryptocurrency industry, complete with ominous but ill-defined threats of massive civil liability and even potentially criminal prosecution.

Furthermore, the record is clear that without the exculpation provision, the parties would decline to proceed with the rebalancing transactions and Binance.US deal, thus producing the calamitous consequences found by the bankruptcy court. *See* Bk.Dkt.1139 (Voyager's financial advisor doubting that Voyager and exculpated parties "could or would proceed" with plan "without exculpation" given "the current political and regulatory environment"). It is thus no answer that Voyager "need only excise" or the court "need only stay" the exculpation clause so the exculpated parties can "proceed with the transactions contemplated by the plan." Opp.53-54. The uncontroverted evidence demonstrates that absent the exculpation clause, those transactions will not "proceed" at all.

The government asserts that Voyager has "not met [its] evidentiary burden" of showing that Binance.US is "unwilling to agree to a brief extension" of the transaction's April 18 closing date. Opp.54-55. Putting aside that the government bears the burden of obtaining a stay, it is

unclear how Voyager could have satisfied this "evidentiary burden" given that plan confirmation evidence closed *before* the government filed its belated objection. In any event, Voyager represents that within the past 24 hours, it has consulted with Binance.US, which has not consented to an extension of the April 18 closing date.

Last, without addressing the district court's mistaken belief that the Binance.US transaction could close as late as May 8 if not later, the government faults Voyager for not requesting a briefing schedule that would allow the government's appeal to be decided before April 13, and instead asking this Court to vacate the stay. Opp.55. That is a "non-sequitur to end all non-sequiturs." *Helix Energy Sols. Group, Inc. v. Hewitt*, 143 S. Ct. 677, 688 n.5 (2023). The district court committed numerous errors in granting a stay, most of which the government does not defend. Voyager exercised its right to seek relief from this Court, and that relief should be granted.

## CONCLUSION

The Court should vacate the stay.

April 7, 2023                                  Respectfully submitted,

                                               /s/ George W. Hicks, Jr.

Christine A. Okike, P.C.                       George W. Hicks, Jr., P.C.
KIRKLAND & ELLIS LLP                           KIRKLAND & ELLIS LLP
601 Lexington Avenue                           1301 Penn. Ave., N.W.,
New York, N.Y. 10022                           Washington, D.C. 20004
(212) 446-4900                                 (202) 389-5000


*Counsel for Debtor-Appellant*

15

## CERTIFICATE OF SERVICE

On April 7, 2023, the foregoing opposition was submitted to the Court by CM/ECF and thereby served on all parties.

/s/ *George W. Hicks, Jr.*
George W. Hicks, Jr., P.C.

## CERTIFICATE OF COMPLIANCE

This opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). According to the word processing system used to prepare this document, the document contains 2,600 words.

/s/ *George W. Hicks, Jr.*
George W. Hicks, Jr., P.C.